Marianne SCHWARTZ and Elaine R. Renoire, Appellants,

v.

John R. SCHWARTZ, Appellee.

No. 51A01–0108–CV–315.

Court of Appeals of Indiana.

Aug. 16, 2002.

Troy W. Harter, Harter & Kinnard, Indianapolis, IN, Attorney for Appellant.

Jeffrey B. Kolb, Emison, Doolittle, Kolb & Roellgen, Vincennes, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

In 1994, Elaine Renoire ("Elaine") was appointed the guardian of the estate and person of her grandmother, Mary Gertrude Fisher ("Gert") by the Martin Circuit Court and was ordered to file an inventory and accounting later that same year. Gert was eventually moved into her daughter, Marianne Schwartz's ("Marianne"), home in Marion County without court approval, and Marianne became her primary caregiver.

Elaine failed to file her first accounting with the trial court until 1998. At that time, John Schwartz ("John"), Gert's son, objected to the accounting. Elaine then filed a motion for change of venue. John later filed a petition requesting that the

trial court remove Elaine as guardian of the estate. The motion for change of venue was denied, and the trial court granted John's petition and removed Elaine as the guardian of the estate. Thereafter, both Elaine and Marianne filed petitions for compensation and reimbursement of expenses in the amounts of $122,399.64 and $312,000 respectively. The trial court granted the petitions, but not in the full amounts requested, awarding $35,000 to Elaine, and $65,000 to Marianne.

Elaine and Marianne filed notices of appeal and the appeals were consolidated for our review. John cross-appeals. We restate and reorder the issues on appeal as follows:

I. Whether the trial court abused its discretion when it removed Elaine as guardian of the estate;

II. Whether Elaine's and Marianne's requests for compensation were time barred;

III. Whether there was an express agreement for compensation for services rendered between the guardianship and Elaine and Marianne sufficient to rebut the presumption that services for the care of a relative are rendered out of love and affection;

IV. Whether the trial court abused its discretion when it awarded compensation to Elaine and Marianne.

V. Whether the trial court abused its discretion when it awarded $35,000 to Elaine and $65,000 to Marianne for compensation for services rendered, and expenses incurred, which was significantly less than the amount of compensation they requested; and,

VI. Whether the trial court abused its discretion when it denied the motion for change of venue.

We affirm and remand for proceedings consistent with this opinion.

### Facts and Procedural History

In February, 1994, Gert suffered debilitating injuries from a stroke while in Florida, which required hospitalization and a subsequent transfer to a nursing home. Marianne was initially appointed as Gert's temporary guardian by the Martin Circuit Court. She later filed a petition requesting appointment as permanent guardian, to which John objected. On June 3, 1994, John and Marianne entered into an agreement which named Marianne's daughter, Elaine, as Gert's guardian. The trial court approved the agreement and appointed Elaine guardian of the estate and the person. Pursuant to the trial court's order, Elaine was required to make quarterly accountings,[1] file an inventory within 60 days, obtain court approval prior to transferring Gert from the Martin County Nursing Center to another facility, and provide notice to John of all matters pertaining to the guardianship. Appellant's App. p. 13.

Elaine filed an inventory within 60 days and also petitioned to have Gert transferred to a facility in Marion County because both she and Marianne resided there.[2] The petition was granted on August 4, 1994, and Gert was transferred to Brookview Special Care and Rehab facility in Indianapolis. Without seeking prior court approval, Gert was later transferred to Windsor Manor Nursing Home in November, 1994, because Elaine and Marianne felt that the care Gert was receiving at Brookview was inadequate. When issues regarding Gert's care at Windsor

---

1. Elaine did not file an accounting until 1998.

2. John lives in Atlanta, Georgia.

Manor arose, Marianne and Elaine determined that it would be in Gert's best interest to move her into Marianne's home in Beech Grove, Indiana. This move was also made without prior court approval.

When Gert was moved into Marianne's home in July, 1995, Marianne assumed the role of primary caregiver for Gert. Initially, due to Gert's dependence on a wheelchair and limited space in Marianne's home, Gert lived in Marianne's living room with a hospital bed and a bedside commode. In 1998, upon the advice of Gert's occupational therapist, Trudy Martinez, Elaine petitioned the court for funds to add and alter rooms of Marianne's house to provide, in part, a handicapped bathroom, enlarged doorways, and vinyl floors. However, renovations to Marianne's home were commenced prior to the filing of the petition, and although the court never granted the petition, $37,000 was paid from the guardianship estate for improvements to Marianne's home.

When Gert was moved to Marianne's home, Elaine found nurses aides to come into the home to assist Marianne in taking care of Gert. Elaine primarily hired college and nursing students at rates significantly lower than an agency would charge. However, Elaine, who was aware of the Internal Revenue Service ("IRS") reporting laws, failed to report the payments to the IRS and the payments to the aides were not deducted from Gert's income taxes.

Elaine did not file an accounting after the initial accounting was filed in 1994 until August 7, 1998.[3] On September 25, 1998, John filed an objection to the August 7, 1998, accounting. John also objected to

Elaine's petition to transfer venue, which was filed on November 12, 1999. Elaine filed another accounting on November 29, 1999. John then filed a motion requesting that the trial court remove Elaine as guardian of the estate. The trial court held a hearing on those matters on January 26, 2000.

After the hearing and additional briefing, the trial court issued an order on September 13, 2000.[4] The trial court found that Elaine mismanaged estate assets, failed to follow court orders, and failed to follow the law by avoiding payment of income taxes on aides she hired to assist in Gert's care and by failing to comply with IRS reporting requirements. Appellant's App. pp. 15–17. The trial court also determined that venue was proper in Martin County because "of the long and significant history" of the case, and

> it would be inefficient to move this matter to Marion county because of the learning curve that would be involved for any new judge or court and the fact that half the parties drive from Atlanta to Martin County for any hearings and would merely have to drive further and would be inconvenienced to go further to Indianapolis.

Appellant's App. pp. 17–18.

Additionally, the trial court ordered Elaine to reimburse the estate for the following assets it found were mismanaged:

a) $10,000.00 CD improperly gifted to [Marianne],

b) $37,000.00 improperly expended on [Marianne's] house,

---

3. Elaine claims that she gave all the information to file the accountings to her attorney, who failed to file them.

4. From the date of the hearing to September 13, 2000, Elaine continued to serve as guardian of the person and the estate. She also filed two additional accountings, to which John also objected.

c) Over $15,000 improperly paid to Marianne Schwartz without court approval,

d) $5,000.00 paid to [Elaine] without approval,

e) $5,000.00 in personal property in the Florida condominium which is not inventoried or listed on the account,

f) $13,000.00 of personal property in the Loogootee home which was sold without court approval and was not included in the account[ing], and

g) As of the date of this order eight percent (8%) simple interest on the total charged owed.

Appellant's App. p. 18. The trial court removed Elaine as guardian of the estate, but Elaine remains guardian of the person. Old National Trust was appointed guardian of the estate. The trial court also found that John was entitled to reimbursement in the amount of $11,300 for expenses and attorney fees he incurred for the benefit of the guardianship estate. Appellant's App. p. 19.

On November 2, 2000, Elaine filed a petition requesting compensation and expenses incurred while she was the estate guardian in the amount of $122,399.64. Appellant's App. p. 42. She also filed an additional accounting. John objected to both the accounting and the petition. Marianne also filed a petition requesting compensation for room and board, services rendered, and expenses in an amount over $312,000. On February 12, 2001, Marianne filed a motion for change of venue and stay of proceedings until a proper determination of venue could be made,

which Elaine joined on February 13, 2001. A hearing was held on February 13, 2001, at which the trial court stated that the issue of venue would be scheduled for a hearing at a later date, but it also noted that nothing had changed from its previous ruling that venue was proper in Martin County. Appellee's App. p. 113.

On March 23, 2001, the trial court held a hearing on the issues of compensation requested by Elaine and Marianne, and John's objections to the four accountings Elaine filed after the August 7, 1998 accounting while she was still the guardian of the estate. After that hearing, Elaine was ordered to reimburse the estate for 1) a computer she purchased using estate funds in the amount of $3,255.15; 2) supplies she purchased using estate funds in the amount of $4,752.41; and, 3) payments made to Marianne in the amount of $5,676. She was also ordered to pay interest in the amount of 8% from the date of judgment. Appellant's App. p. 26. However, the trial court also granted her petition for compensation in part and ordered Old National Trust to pay to Elaine $35,000. Appellant's App. p. 28. Additionally, the trial court granted Marianne's petition for compensation in part and ordered Old National Trust to pay to Marianne $65,000. Appellant's App. p. 29. Both Elaine and Marianne now appeal, and John also raises cross-appeal issues in his brief.

## I. Removal of Elaine as the Estate Guardian

Elaine argues that the trial court abused its discretion when it removed her as guardian of the estate.[5] Indiana Code section 29-3-12-4 provides that a trial

---

5. In an order following the March 23, 2001 hearing, the trial court also ordered Elaine to reimburse the estate for the purchase of a computer in the amount of $3,255.15 and $4,752.41 for supplies which were allegedly purchased on behalf of Gert. In her argument that she should not have been removed as Guardian of the Estate, Elaine also argues that she should not have been ordered to reimburse the estate for the computer and the supplies. Elaine should have raised these arguments under a separate argument heading as required by Indiana Appellate Rule 46(A)(8)(c). In addition, with regard to the

court may remove a guardian who has proven unsuitable of discharging her responsibilities or has failed to perform a duty imposed by law or court order. Ind. Code § 29–3–12–4 (1994); *see also* Ind. Code § 29–1–10–6 (1999). "The statute governing the proceedings for the removal of a guardian vests broad discretion in the trial court, and the appellate court will not interfere unless an abuse of discretion clearly appears." *Carr v. Carr*, 685 N.E.2d 92, 97 (Ind.Ct.App.1997) (citing *Sibley v. Lewis*, 117 Ind.App. 655, 659, 75 N.E.2d 420, 422 (1947)).

Elaine contends that she

only acted on what she believed were within her duties and consistent with . . . Gert's desires. Further, [she] made every financial move to successfully preserve and increase the value of the estate, increasing it from approximately $450,000 in 1994 to $750,000 over the course of her tenure as Estate Guardian.

Br. of Appellant Elaine Renoire at 10. In making its determination to remove Elaine as Estate Guardian, the trial court found that she 1) mismanaged estate assets;[6] 2) failed to follow court orders when she failed to file quarterly accountings and failed to notify John of significant developments in the guardianship; and, 3) failed to follow the law by avoiding payment of income taxes to aides hired to take care of Gert and failed to comply with any IRS reporting requirements. Appellant's App. pp. 15–17.

Elaine takes issue with each of these findings and argues they do not justify her removal as Estate Guardian. However, the record clearly reflects that Elaine failed to file an accounting for nearly four years although ordered to do so by the court. She also failed to comply with the court's order that she keep John notified of all significant developments of the guardianship. Additionally, at the January 26, 2000 hearing, Elaine testified that she was aware of the IRS's reporting requirements and intentionally continued to make payments to nurses aides without reporting them even though it is prohibited by law. Appellee's App. p. 82. Under these facts and circumstances, the trial court did not abuse its discretion when it removed Elaine as the Estate Guardian. *See e.g., Carr*, 685 N.E.2d at 97 (stating that removal of the Estate Guardian was proper where she failed to file an accounting within the time period prescribed by statute and requested $80 per hour for ministerial services provided to the estate).

## II. Timeliness of Elaine's and Marianne's Requests for Compensation

■ After the trial court issued its September 13, 2000 order concerning the Au-

---

computer, Elaine has failed to make a cogent argument as required by Rule 46(A)(8)(a); therefore, her argument is waived. *See West v. State*, 755 N.E.2d 173, 181 (Ind.2001). With regard to the supplies, Elaine attempted to enter into evidence a box of receipts, her evidence of the expenses incurred for the supplies. John objected and the trial court ruled that the box of receipts was not admissible. Tr. of March 23, 2001 hearing pp. 204–208. Thus, there is no evidence in the record to support Elaine's argument that the $4,752.41 was incurred by Elaine for the purchase of supplies for Gert, and the trial court did not abuse its discretion when it ordered her to reimburse the estate for that amount.

**6.** The trial court found that the following estate assets were mismanaged by Elaine: 1) a $10,000 CD which was given to Marianne; 2) $37,000 from estate funds spent to renovate Marianne's home; 3) $15,000 given to Marianne from estate funds without court approval; 4) $5,000 transferred from estate funds to Elaine without court approval; 5) "not accounting for inventorying $5,000.00 in personal property in the Florida condominium;" and, 6) "not accounting for $13,000.00 of personal property in the Loogootee home which was sold without court approval and appraisal." Appellant's App. p. 16.

gust 7, 1998 accounting filed by Elaine and removing Elaine as Estate Guardian, both Elaine and Marianne filed requests for compensation for services rendered and expenses incurred on behalf of the guardianship. In his cross-appeal, John argues that the trial court's September 13, 2000 order is a final judgment barring claims by Elaine and Marianne for compensation, fees, and reimbursement incurred during the period covered by the 1998 accounting.

We disagree with John's characterization of the September 13, 2000 order as a final judgment. The August 7, 1998 accounting was an interim accounting. Indiana Code section 29–3–9–6(e) provides:

When an account other than an account in final settlement is filed, the court may approve the same ex parte, but the account may be reviewed by the court at any subsequent time and does not become final until an account in final settlement is approved by the court after notice and hearing.

Ind.Code § 29–3–9–6(e) (1994). We note that no final accounting has been filed in this matter and the guardianship estate remains open.

Additionally, Indiana Code section 29–3–10–1(d) states that

[a]ny person having a claim against the protected person or the protected person's property or against the guardian as such may file the claim with the court *at any time* before the claim is barred by the statute of limitations and, upon proof of the claim, procure an order for its allowance and payment from the guardianship property.

Ind.Code § 29–3–10–1(d) (1994) (emphasis added). The statute does not require, and John does not direct us to any authority, statutory or otherwise, that provides that a claim must be filed on the interim accounting that covers the period in which the claim arose. We therefore hold that Elaine and Marianne's claims for compensation and reimbursement are not time barred, particularly where their claims for services rendered are of an ongoing and continuous nature.

### III. Agreement for Compensation

In his cross-appeal, John also argues that there "was no express contract for the provision of services between the guardianship estate and Elaine and Marianne[;]" therefore, under Indiana law there is a presumption that they provided the services out of love and affection or gratuitously. Br. of Appellee at 22. With regard to both Marianne and Elaine, the trial court found that although they provided care to Gert out of love and not because they expected compensation, they provided services to and for the benefit of Gert and were entitled to compensation. Appellant's App. pp. 27–28. Additionally, with respect to Marianne, the trial court stated that she reasonably relied upon representations made by Elaine that she would receive some compensation for the services she provided to Gert. Appellant's App. p. 29.

In support of his argument, John relies in part on our opinion in *Estate of Hann v. Hann*, 614 N.E.2d 973 (Ind.Ct.App.1993). In *Hann*, the Appellee resided with the decedent for forty-five years and paid many of her expenses; therefore, he made a claim for services against the decedent's estate for services rendered to her during her life, which the trial court granted. *Id.* at 979–80. On appeal, the estate argued that there was insufficient evidence to support the Appellee's claim for services. *Id.* at 979. In addressing this argument, we stated:

Where one accepts valuable services from another the law implies a promise to pay for them. Where services are performed by a non-family member, an

agreement to pay may be implied from the relationship of the parties, the situation, the conduct of the parties, and the nature and character of the services rendered. However, where the parties are family members living together, and the services are rendered in the family context, no implication of a promise to pay by the recipient arises. Rather, there is a presumption that services are performed gratuitously when there is evidence of a bond or family relationship between the decedent and the claimant, unless a contract implied in fact is shown.

*Id.* (internal citations omitted). We reversed the trial court's judgment granting the Appellee's claim for services because of the lack of evidence of the decedent's intention to pay the Appellee for his services, the fact that the Appellee and decedent lived together as family members for forty-five years, and the evidence that established that the living arrangement between the Appellee and the decedent was for their mutual benefit. *Id.* at 979–80.

 Elaine and Marianne argue that they are entitled to compensation under the legal theory of implied contract. An express or implied contract to pay for services rendered by a claimant will be found only when both the elements of intention to pay and expectation of compensation exist. *Id.* at 979 (citations omitted). "While the law implies an agreement to pay for services rendered, the implication may be rebutted by evidence that the circumstances under which the services were rendered and accepted were such as to exclude the idea that the parties were dealing on the basis of a contract." *Id.* However, our court has noted that the "expectation of compensation may coexist with higher motives prompted by affection or the sense of duty, and that the existence of the latter does not necessarily exclude

the idea of pecuniary compensation." *Walting v. Brown,* 139 Ind.App. 18, 24, 211 N.E.2d 803, 807 (1965) (quoting *Wainwright Trust Co. v. Kinder,* 69 Ind.App. 88, 95–96, 120 N.E. 419, 421 (1918)). We also observe that persons who render beneficial services to a protected person in good faith are entitled to reasonable compensation and reimbursement. *See* Ind. Code § 29–3–4–4 (1994).

In this case, the record reveals that Gert was placed in three nursing homes, but Marianne was upset with the level of care that Gert received. Therefore, Marianne agreed to move Gert into her home and become her primary caregiver. Also, Marianne quit her part-time job to do so. Marianne testified that Gert needs care essentially twenty-four hours per day. At the March 23, 2001 hearing, the following exchange occurred:

ATTORNEY HARTER: Did you prior to your mother coming into your home, did you ever have any conversations with the estate guardian about compensation for her coming in there?

MARIANNE: Yes.

Appellee's App. p. 141. Marianne was then cross-examined by John's attorney.

ATTORNEY KOLB: ... [I]n your conversations with the guardian ... what was your understanding about compensation?

MARIANNE: ... I knew that sometime, I would be compensated. She told me not to worry, that I would be compensated.

ATTORNEY KOLB: When did this discussion take place?

MARIANNE: Oh, early on, when we decided to bring her home.

ATTORNEY KOLB: And what was your understanding of how you would be compensated?

MARIANNE: She didn't . . . we didn't discuss how, but that Gert would compensate me.

ATTORNEY KOLB: So no amount was discussed?

MARIANNE: No, no particular amount.

. . . .

ATTORNEY KOLB: No method of compensation was discussed?

. . . .

MARIANNE: No, we didn't go into it that deeply.

Appellee's App. pp. 141–42. Elaine also testified that prior to moving Gert into Marianne's home, she and Marianne had discussions concerning compensation to Marianne. Appellee's App. pp. 166–67.

Unlike the facts in *Hann* where the living arrangement was for the mutual benefit of the parties involved, Marianne and Elaine moved Gert into Marianne's home for the specific purpose of taking care of Gert because she was unable to care for herself. Also, Marianne quit her job to take care of Gert and discussed the matter of compensation with Elaine. The fact that a specific amount of compensation or method of payment had not been discussed does not, as John would argue, demonstrate that Marianne had no reasonable expectation of payment.

Marianne and Elaine's testimony reveal that they were concerned with the level of care that Gert was receiving in nursing homes, and all parties are in agreement that Marianne has provided an optimal level of care to Gert since she was moved into Marianne's home. Additionally, nursing home care is significantly more expensive than the care provided by Marianne, and Gert's estate has benefited by her placement in Marianne's home. Although Marianne has likely taken care of Gert due to the affection and love she feels for her,

Marianne has become Gert's caregiver to the detriment of her own economic well-being. Therefore, we agree with Elaine and Marianne that they have established the existence of an implied contract for services rendered on Gert's behalf.

## IV. Compensation For Services Rendered and Expenses Incurred

■ Marianne and Elaine argue that the trial court abused its discretion when it failed to award to them the entire amount of compensation they requested. Conversely, John argues that the trial court abused its discretion when it awarded any compensation at all to Marianne and Elaine. Indiana Code section 29–3–4–4 provides:

> If not otherwise compensated for services rendered, any guardian, attorney, physician, or other person whose services are provided in good faith and are beneficial to the protected person or the protected person's property is entitled to reasonable compensation and reimbursement for reasonable expenditures made on behalf of the protected person. These amounts may be paid from the property of the protected person as ordered by the court.

Ind.Code § 29–3–4–4 (1994). Additionally, Indiana Code section 29–3–9–3 provides that "[a] guardian is entitled to reasonable compensation for services as guardian and to reimbursement for reasonable expenditures made in good faith on behalf of the protected person." Ind.Code § 29–3–9–3 (1994).

In its order regarding compensation to Elaine, the trial court found in part:

> 4. [Elaine] incurred expenses for and upon behalf of [Gert], some of which are reasonable and some of which are not reasonable.

5. [Elaine] has provided some services to and for the benefit of [Gert], and [Elaine] is entitled to some level of compensation....

6. As the Court has ruled during the course of related proceedings conducted in the above-captioned cause of action, [Elaine] heretofore has received some financial benefits from [Gert's] Estate. Moreover, [Elaine], as Guardian of the Estate, has not performed all duties consistent with the Oath of record and Indiana law.

7. Old National Trust Company, as Guardian of the Estate, shall pay to [Elaine] the sum of $35,000, which is sufficient to reimburse [Elaine] reasonably-incurred expenses and services provided. The sum is far less than that sought by [Elaine], but it is an award [which] is consistent with the record of proceedings.

Appellant's App. pp. 27–28. With regard to compensation for Marianne, the trial court issued the following order, in part:

6. [Marianne] incurred expenses for and upon behalf of [Gert], some of which are reasonable and some of which are not reasonable.

7. [Marianne] provide[d] quality care to and for the benefit of [Gert], and [Marianne] is entitled to some level of compensation....

8. As the Court has previously ruled, [Marianne] heretofore has received some financial benefits from [Gert's] Estate. The nature and extent of the benefits received have been the subject of decision and orders entered addressing whether the [Guardian of the Person], who also served previously as [Guardian of the Estate], performed all duties consistent with the Oath of record and Indiana law.

9. The [Guardian of the Estate] shall pay to [Marianne] the sum of $65,000, which is sufficient to reimburse [Marianne] for reasonably-incurred expenses and services provided. The sum is far less than that sought by [Marianne], but is an award [which] is consistent with the record of proceedings.

Appellant's App. p. 29.

John contends that the trial court abused its discretion in awarding any compensation to Elaine and Marianne "because of the lack of evidence regarding an agreement for the compensation and records in support of the compensation." Br. of Appellee at 22. As we stated in Part III of this opinion, John's argument that there was no agreement for compensation is not persuasive. John also argues that there was no evidence to support an award of compensation because neither Elaine nor Marianne had records to corroborate their claims. While comprehensive records are preferable, we believe the evidence supports the awards made by the trial court.

Both Elaine and Marianne testified that Gert requires twenty-four hour care, and they have spent numerous hours providing that care to her after they moved Gert into Marianne's home in 1995. As Gert's caregiver, Marianne was required to perform many tasks for Gert, including clearing mucus from her throat and mouth several times a day, taking care of Gert's incontinence, monitoring her blood pressure, pulse, and temperature, feeding her through a G tube, and doing her laundry. Elaine frequently assisted Marianne with these tasks. Also, Elaine and Marianne provided numerous receipts to the trial court documenting items they had purchased for Gert for which they were seeking reimbursement. Finally, Elaine testified that during the six-year period when she served as the guardian of the estate, she spent approximately twenty hours per

month rendering services for the guardianship.

As we stated above, Elaine and Marianne claim that they were entitled to the full amount of compensation requested, approximately $122,000 and $312,000 respectively. A trial court may award reasonable compensation and reimbursement for reasonable expenses. *See* Ind.Code § 29–3–4–4 (1994). Also, a guardian is entitled to reasonable compensation for services rendered and reimbursement for reasonable expenditures. *See* Ind.Code § 29–3–9–3 (1994). The trial court found that neither Elaine's request for over $122,000, nor Marianne's request for $312,000 was reasonable. Therefore, it awarded $35,000 to Elaine and $65,000 to Marianne.

While Elaine and Marianne presented sufficient evidence that they were entitled to compensation and reimbursement for expenses, the evidence they submitted to the trial court was not detailed or specific, but of a more general nature, particularly with regard to the amount they felt they should be compensated for the services they rendered to Gert as her caregivers. Also, Elaine did not have any records of the time she spent rendering services to the guardianship while she was the Estate Guardian. Under these facts and circumstances, we hold that the trial court did not abuse its discretion when it awarded to Elaine and Marianne amounts significantly less than the amount of compensation they requested.

## V. Venue

■ Finally, Elaine and Marianne argue that the trial court abused its discretion when it denied their motion for change of venue.

The trial court's grant or denial of a motion to transfer venue is an interlocutory order. We review interlocutory orders under an abuse of discretion standard. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the trial court has misinterpreted the law. *Banjo Corp. v. Pembor,* 715 N.E.2d 430, 431 (Ind.Ct.App.1999). Indiana Code section 29–3–2–2, which governs venue for the appointment of a guardian and transfer of proceedings, provides in part:

(a) The venue for the appointment of a guardian or for protective proceedings is as follows:

(1) If the alleged incapacitated person or minor resides in Indiana, venue is:

(A) in the county where the alleged incapacitated person or minor resides.

. . . .

(c) If it appears to the court at any time that:

(2) the residence of the incapacitated person or the minor has been changed to another county;

the court may order the proceeding, together with all papers, files, and a certified copy of all orders transferred to another court in Indiana. That court shall complete the proceeding as if originally commenced in that court. . . . Before any transfer is made under this subsection, a hearing pursuant to notice shall be held in the same manner as provided with respect to the appointment of a guardian.

Ind.Code § 29–3–2–2 (1994).

It is clear under Indiana Code section 29–3–2–2 that venue was proper in Martin County when the petition for guardianship was filed because Gert resided in a nursing home in Martin County in addition to owning a home in Loogootee, Indiana, which is situated in Martin County.

In 1999, Elaine filed a petition to transfer the guardianship to Marion County due to Gert's change of residence to Marion County. The trial court ruled on the petition on September 13, 2000, and Elaine did not appeal that ruling; therefore, Elaine's argument that the trial court abused its discretion when it denied her motion to transfer the guardianship to Marion County is waived. *See In the Matter of Liquidation of United Sav. and Loan Ass'n of Gary*, 542 N.E.2d 211, 214 (Ind.Ct.App. 1989), *trans. denied.*

However, on February 12, 2001, Marianne filed a new motion for change of venue, which was joined by Elaine. The trial court stated that it would set the matter for a hearing, but failed to do so as required by Indiana Code section 29–3–2–2(c) and never ruled on the motion.[7] Therefore, we remand to the trial court for the limited purpose of holding a hearing and ruling on the motion for change of venue as to all further proceedings.

## Conclusion

The trial court did not abuse its discretion when it removed Elaine as the Estate Guardian. Marianne and Elaine's claims for compensation are not time barred, and they established that there was an implied agreement for compensation with the guardianship. Also, the trial court did not abuse its discretion when it awarded $35,000 to Elaine and $65,000 to Marianne for reasonable compensation and reimbursement for expenses. We remand to the trial court for the limited purpose of

holding a hearing and ruling on Marianne's motion for change of venue as to all further proceedings.

Affirmed and remanded.

BARNES, J., and KIRSCH, J., concur.

---

**7.** At the February 13, 2001 hearing Marianne's counsel orally moved for a transfer of venue and the trial court stated:

> With regard to the Motion for Change of Venue, I don't have that scheduled for today, nor do I have the time to do it today, and we ... and this matter had previously been presented and ruled upon, and I don't know if anything has changed since that date and time. So, we will schedule it for a

subsequent hearing on a later date and time and note your objection.

Appellee's App. p. 113. The trial court also ordered Marianne's counsel to be prepared to submit at the hearing on venue evidence regarding Gert's ability to travel to hearings if the guardianship were transferred to Marion County and her ability to understand the proceedings. Tr. of February 13, 2001 hearing pp. 57–59.